**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PETER T. ENGLER and TRACEY
ENGLER,

                v.                                                 No. 13-CV-575

MTD PRODUCTS, INC. and CUB
CADET, LLC,

                                  Defendants.

_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                                **OF COUNSEL:**

HORIGAN, HORIGAN LAW FIRM         TIMOTHY HORIGAN, ESQ.
P.O. Box 250
49 East Main Street
Amsterdam, New York 12010
For Plaintiffs

BAILEY, KELLEHER LAW FIRM          JOHN W. BAILEY, ESQ.
Pine West Plaza 5, Suite 507
Washington Avenue Extension
Albany, New York 12205
For Defendants

WEGMAN, HESSLER LAW FIRM        PATRICK J. QUALLICH, ESQ.
6055 Rockside Woods Blvd.
Suite 200
Cleveland, Ohio 44131
For Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**[1]

Plaintiffs Peter T. Engler ("Engler") and Tracey Engler (collectively "plaintiffs," where appropriate) bring this product liability action pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332 against defendants MTD Products, Inc., which designed, manufactured, distributed, tested, sold, marketed, and assembled the Cub Cadet lawnmower, and Cub Cadet, LLC (collectively "MTD" where appropriate). Dkt. No. 30-1, at 35. Pending before the Court are several motions filed by MTD. MTD has filed (1) a motion for summary judgment (Dkt. No. 29); (2) a request to preclude from consideration in opposition to their motion for summary judgment an affidavit of plaintiffs' proposed expert (Dkt. No. 39), pursuant to Federal Rules of Civil Procedure (Fed. R. Civ. P.) 26(a)(2)(B) and 37(c)(1) (Dkt. No. 44-1, at 7-11); and (3) a motion to preclude plaintiffs' proposed expert witness from testifying at trial pursuant to Fed. R. Civ. P. 704. Dkt. No. 43. This Memorandum-Decision and Order addresses defendants' request to exclude Dkt. No. 39 from consideration on the motion for summary judgment. For the following reasons, MTD's request is granted in part and denied in part.

## I. **Background**

### A. **Relevant Facts**

As relevant here, on July 28, 2011, plaintiff Peter T. Engler mowed his home's front lawn using a Cub Cadet riding lawn mower. Engler Dep. (Dkt. No 30-2, at 2-137), at 57.[2] After

---

[1]  This case was referred to the undersigned by United States District Court Judge Glenn T. Suddaby on the consent of all parties. Dkt. No. 22.

[2]  Unless otherwise specified, cites to Engler's deposition transcript refer to the page numbers printed on the transcript pages, not those generated by CM/ECF.

taking a short break, Engler started the lawnmower and drove down his driveway, turning right, heading toward his in-laws' residence located approximately three-quarters of a mile down the road.  Id. at 12, 123-125, 134, 154.  Engler had driven the lawnmower to his in-laws' home without issue about a month earlier.  Id. at 12, 64-65, 124.  A few seconds after turning out of his driveway, Engler realized that the shift lever "wasn't in gear anymore" and that the lawnmower was picking up speed without his depressing the gas pedal.  Id. at 132-33, 135.  Engler realized the mower was not in gear because the lawnmower did not react when he pressed the gas pedal or pushed up the throttle.  Id. at 132.  He twice attempted to push the shift lever into forward gear, but it did not engage.  Id. at 137.  Engler also attempted to hit the brakes but this did not stop or slow down the lawnmower.  Id. at 131, 142-44.  Engler then turned the steering wheel slowly to the left to attempt a gradual right turn into his neighbor's driveway.  Id. at 131, 146.  Engler was unable to complete this turn and fell from the lawnmower about two feet from his neighbor's driveway.  Id. at 158, 162.

## B. **Relevant Procedural Background**

Parties agreed, through signing a Uniform Pretrial Scheduling Order ("Uniform Order"), that the deadlines stipulated to in the order supersede the deadlines set forth in Fed. R. Civ. P. 25(a)(3) . . ."  Dkt. No. 8, at 1.  Through this order, discovery was to close on May 2, 2014.  Id. The parties submitted a joint letter request seeking to extend the discovery deadline until May 29, 2014 "for the limited purpose of conducting the deposition of Mr. [Ernest J.] Gailor," ("Gailor") the plaintiffs' proposed expert witness.  Dkt. No. 20, at 1.  The Court granted the extension of discovery for this limited purpose.  Dkt. No. 21.  The Uniform Order further set forth that "no later than 90 days prior to the discovery deadline set in [the order], plaintiffs shall

identify any expert(s) and . . . shall serve on the other parties the expert's written report pursuant to Fed. R. Civ. P. 26(a)(2)(B)" Id. at 2. Moreover, "no later than 45 days prior to the discovery deadline . . . defendant(s) shall identify any expert(s) and . . . shall serve on the other parties the expert's written report pursuant to Fed. R. Civ. P. 26(a)(2)(B)." Dkt. No. 8, at 2. Parties further agreed that "[n]o later than 30 days prior to the discovery deadline set [in the order], all parties must identify all experts who will contradict or rebut evidence . . . and . . . shall serve on the other parties such experts written report pursuant to Fed. R. Civ. P. 26(a)(2)(B)." Under the Federal rules, statements supplementing an expert's report are due before the close of discovery as set by the parties. FED. R. CIV. P. 26(e)(2). The duty to supplement "extends both to information included in the report and to information given during the expert's deposition." Id.

Plaintiffs' proposed expert witness completed an initial expert report, dated April 3, 2013. Dkt. No. 30-1, at 103. He inspected the mower on December 6, 2011. Id. MTD was provided this report on October 31, 2013, along with Gailor's Curriculum Vitae. Dkt. No. 30-1, at 100-105. MTD's proposed expert witness, Daniel J. Martens ("Martens"), Vice President, Product Development & Safety at MTD, performed an inspection of the subject lawnmower and accident site on March 12, 2014. Dkt. No. 30-2, at 129. He also reviewed the owner's manual and warnings provided with Cub Cadet mowers. Id. at 122-28. He provided a report on his findings to MTD, dated March 17, 2014. Id. at 122.[3] Martens was deposed on April 1, 2014.

---

[3] The date this document was provided to plaintiffs is unclear. As Martens was deposed on April 1, 2014, and plaintiffs questioned Martens as to the contents of his report, it is clear that the defendants provided this report to plaintiffs sometime prior to April 1. See Dkt. No. 38-3.

Dkt. No. 38-3, at 13-18.[4]  On April 29, 2014, plaintiffs provided MTD with a second report from

Gailor, dated April 25, 2014.  Dkt. No. 43-2.  Gailor was deposed on May 29, 2014.  Dkt. No.

30-2, at 1.  On September 29, 2014, plaintiffs provided MTD an affidavit authored and signed

by Gailor, dated September 26, 2014.  Dkt. No. 39.

### C.  **Testimony and Submissions of Plaintiffs' Proposed Expert**

In his initial report, dated April 2, 2013, Gailor stated that he visually inspected the

lawnmower on December 6, 2011 in order "to assess the condition of the new machine."  Dkt.

No. 30-1, at 103.  Gailor contended that the brake system in the subject lawnmower "is a simple

disc/caliper system."  Id.  Gailor opined that "the calipers did not firmly engage the brake disc"

which "allowed the machine to roll forward even when the brake was engaged.  The brake

appeared to be out of adjustment."  Id.  Gailor also observed that the operator's manual had

"no instruction for the adjustment of the brake," concluded that "[b]rake adjustment must be

made by a service technician," and provided that "[t]he brake is initially adjusted at the factory

and shipped to distributors."  Id.  Finally, Gailor noted that the manual "cautions against using

the machine on a cross slope that exceeds 15 degrees" and that "Engler was driving down a

street with a 22 degree down slope and no appreciable cross slope."  Id.

Gailor testified at a deposition on May 29, 2014.  Dkt. No. 30-2 at 61-137.  As relevant

here, Gailor testified that he made a request to defendants' attorney to take apart the

lawnmower to inspect the parts on December 6, 2011.  Id. at 81.  He stated that he was told

he could not disassemble the mower.  Id. at 67-68.  He stated further that he was not aware

---

[4]  Cites to the Martens deposition transcript refer to the page numbers assigned by CM/ECF, not those on the transcript page itself.  Cf. n.2, supra.

that defendants' expert disassembled the lawnmower until he received Martens' report and photographs. Id. at 81. Gailor contended that, at the time he inspected the mower in 2011, the brakes had "ceased to function." Id. at 89. He stated that the amount of wear on the brakes was more than expected given the low number of hours of use on the mower. Id. at 93. He agreed with Martens' conclusion that the mower's brakes had the equivalent of 300 hours of use. Id. He also agreed that the "abnormal wear" in the mower's system was "confined to the brake pads." Id. at 94. Gailor agreed that if the brake pads on the tractor were readjusted, the brakes would be fully functional, but clarified that even if the brakes were readjusted, he did not believe that "the readjustment would stay in place very long before the rest of the pad would start to deteriorate." Id. at 95. Gailor did not know what caused the brake pads to come out of adjustment. Id. at 96. He defined "out of adjustment" as the "pads were not fully engaging the discs . . . ." because the outer pad "was too far away or worn to the point where it was too far aware [sic] from the face of the disc." Id. Gailor concluded that there existed premature wear of the brake pads. Id. at 98. However, he stated that he did not know the cause of the premature wear. Id. at 99.

Gailor testified regarding the owner's manual. Dkt. No. 30-2, at 100-101. He stated that the manual provided that brake adjustments are to be completed by a service professional. Id. He testified that an operator needs an instruction or warning to take a mower to a service professional to have an adjustment if depressing the brake pedal did not bring the tractor to a complete stop. Id. at 99. Gailor further testified that such warning was "already there" in the operator's manual. Id. at 100-101. In response to an inquiry whether "there is any other instruction or warning that should have been on the product itself as it relates to brakes," Gailor responded in the negative. Id. at 102. He responded "I don't believe so" when asked if there

was "any other instruction or warning that should have been in the manual as it relates to the adjustment of the brakes." Id. Further, when he was asked whether there were "any other criticisms that [he had] of any of the instructions or warnings" other than what he had set forth in his report, Gailor replied, "no." Id. at 105-106.

Finally, in an affidavit sworn to on September 26, 2014, Gailor stated that "[a]fter being provided with the deposition testimony of the defense expert, Daniel Martens, and photographs taken during his inspection, I was able to supplement my initial report." Dkt. No. 39, at 3 ¶ 7. He provided that the brake pads experienced "greatly premature failure" in that the deterioration seen in photographs of the brake pads is "not expected, or even remotely acceptable wear for a lawn tractor braking system only a year old and with only 27 hours of use." Id. Gailor concluded that "[i]n order to exhibit this type of wear in such a small amount of time, these brake pads had to be defective in their manufacture or integrity." Id. at 7. He further concluded that "[t]he premature failure of the brake pads eliminated any opportunity for [plaintiff] to stop the machine, and is the sole proximate cause of his inability to do so." Id. Gailor stated that "[w]hether the brakes were functioning properly and whether they were in proper adjustment is immaterial to their failure. The failure of the brakes in this case was due to premature wear, meaning the brake pads were defective." Id. at 5.

Gailor also contended that the operator's manual did not have instructions for an owner to adjust brakes and that there is no warning or highlighting provided for brake adjustment. Dkt. No. 45, at 7. He concluded that "this omission indicates to the user that brake adjustment is not important. Id. Gailor noted that the "only mention of testing the braking mechanism is a mention of 'Parking Brake Adjustment'" which states that brakes may need an adjustment "'if the tractor does not come to a complete stop when the brake pedal is completely depressed,

of [sic] if the tractor's rear wheels can roll with the parking brake applied and the shift lever in neutral." Id. However, Gailor criticized that this portion of the manual "is not highlighted by the standard exclamation point inside a triangle" and

> does not say how often a user should check the brake, or even if they should do so at all; and it fails to consider that the mower will come to a stop when the user lifts his right foot from the drive pedal without use of the braking system when on flat land.

Id. at 7-8.  Addressing "[d]efendants' characterization of [his] testimony regarding warnings," Gailor contended that his deposition statement about warnings being sufficient related to warnings for adjustment of brakes.  Id. at 5.  He stated that "[w]hile a further warning with regard to how to adjust the brakes might not have prevented this incident, a clear recitation or warning indicating how often to check the brakes and how to do so could certainly have exposed the premature wearing of these brakes."  Id.

## II.  **Discussion**

MTD contends that, pursuant to Fed. R. Civ. P. 37(c)(1),[5] the Court should not consider Dkt. No. 39 in opposition to its motion for summary judgment "in so far as it provides new information" because its belated submission violates Fed. R. Civ. P. 26 (a)(2)(B)[6].  Dkt. No. 44-1, at 9.  Specifically, MTD argues that, in contrast to Gailor's initial

---

[5]  Fed. R. Civ. P. 37(c)(1) provides, as relevant here, that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

[6]  Fed. R. Civ. P. 26(a)(2)(B) provides, in relevant part, that, "[u]nless otherwise stipulated or ordered by the court, this disclosure [required by Rule 26(a)(2)] must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose

report wherein he stated that the brakes appeared out of adjustment (Dkt. No. 30-2, at 99) and deposition testimony in which he contended that he did not know the cause of the brake pad wear (Dkt. No. 30-2, at 98-99), in an affidavit submitted in support of plaintiffs' opposition motion (Dkt. No. 39), Gailor opined that the brake pads failed prematurely due to an unidentified manufacturing defect. Dkt. No. 44-1, at 7-8. MTD also argues that Dkt. No. 39, for the first time, suggests that the warnings in the owner's manual relating to brakes and brake adjustments were insufficient. Id. at 14.

## A. **Analysis**

### 1. **Legal Standard**

Under Fed. R. Civ. P. 26 (a)(2)(B), an expert affidavit is to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). Thus, "[i]t should be assumed that at the time an expert issues his [or her] report, that report reflects his [or her] full knowledge and complete opinions on the issue for which his [or her] opinion has been sought." Hunt v. CNH America LLC, 857 F.Supp.2d 320, 339 (W.D.N.Y. 2012) (citation omitted). Fed. R. Civ. P. 37(c)(1) provides that where a party fails to disclose information under Rule 26(a)(2)(B), "the party is not allowed to use that information or witness to supply information on a motion, at a hearing, or at trial unless the failure was substantially justified or harmless." FED. R. CIV. P. 37(c)(1). The intent behind this rule "is to prevent the practice of

---

duties as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis for them . . . ."

'sandbagging' an opposing party with new evidence." Haas v. Delaware and Hudson Ry. Co., 282 Fed. Appx. 84, 86 (2d Cir. 2008) (internal citations and quotation marks omitted); see Lamarca v. United States, 31 F.Supp.2d 110, 122 (E.D.N.Y. 1999) (citation and internal quotation marks omitted) (holding that the "duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity [to] prepare for effective cross examination and, perhaps, arrange for expert testimony from other witnesses.").

"Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." Kunstler v. City of New York, 242 F.R.D. 261, 264-65 (S.D.N.Y. 2007) (internal quotations and citations omitted). Harmlessness means an "absence of prejudice." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Conventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012). The party who fails to timely disclose bears the burden of proving that its failure was substantially justified or harmless. Id. Courts have held that preclusion under Rule 37(c)(1) is "automatic absent a determination of either substantial justification or harmlessness." Am. Stck. Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002). However, "[d]espite the 'automatic nature of Rule 37 (c)(1) . . . '[p]reclusion of evidence is generally a disfavored action." Kunstler, 242 F.R.D. at *265 (citations omitted). Indeed, courts in this Circuit have held that "preclusion of evidence is a 'harsh remedy,' it should be imposed only in rare situations." Ritchie Risk-Linked Strategies, 280 F.R.D. at 156-57 (internal citations omitted). Therefore, "[b]efore the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties the violation causes, and must consider less

drastic responses." <u>Outley v. City of New York</u>, 837 F.2d 320, 240 (W.D.N.Y. 2012).

### 2. **Application of Fed. R. Civ. P. 26(a)**

First, it must be determined whether Dkt. No. 39 violates Rule 26. Gailor's initial report is dated April 12, 2013. Dkt. No. 30-1, at 103. Martens' report is dated March 17, 2014. Dkt. No. 30-2, at 122-37. Gailor's second report is dated April 25, 2014. Dkt. No. 42-2, at 113-14. Marten's deposition occurred on April 1, 2014, and Gailor's deposition took place on May 29, 2014. Dkt. No. 38-3, at 13-118. Gailor's affidavit, although undated, is sworn to on September 26, 2014. Dkt. No. 39.

Here, the parties agreed, pursuant to the Uniform Order and, thereafter, this Court's extension, that all discovery was to be completed on or before May 29, 2014 and that all expert reports would submitted no later than thirty days before the discovery deadline. Dkt No. 8 at, 1-2. Thus, because Dkt. No. 39 was submitted four months after the (extended) discovery deadline, it is untimely under Rule 26 and the Uniform Order. FED. R. CIV. P. 26; Dkt. No. 8, at 1.

However, it must be determined whether the belated submission of Dkt. No. 39 was substantially justified or harmless and if any new opinions contained therein must be precluded.

### 3. **Substantial Justification or Harmlessness**

Plaintiffs do not respond directly to MTD's specific request to preclude consideration of Dkt. No. 39 on their motion for summary judgment. Dkt. No. 44-1, at 9. Instead,

plaintiffs' reply (Dkt. No. 46) focuses on MTD's broader motion to exclude Gailor from testifying at trial (Dkt. No. 43-4) pursuant to Fed. R. Civ. P. 104(a) and 702. Further, plaintiffs do not directly address the substantial justification/ harmlessness test. Instead, plaintiffs – through Gailor's affidavit – suggest that, rather than proffer new opinions, Dkt. No. 39 is responsive to the report of defendants' expert. Dkt. No. 46, at 6; Dkt. No. 45, at 6 ¶ 7.

### a. **Gailor's Opinion Regarding a Manufacturing Defect**

Specifically addressing Gailor's opinion regarding the brake pads, plaintiffs contend that, "[u]pon receipt of the photographs, exhibits, and reports of the defense expert, [Gailor] was able to determine that the brake failure was causally related to premature wearing of the brake pads." Dkt. No. 46, at 6. Further, in his affidavit, Gailor refutes defendants' claims that he changed his testimony and is presenting a new theory of causation by stating that, "[w]hether the brakes were functioning properly and whether they were in proper adjustment is immaterial to their failure. The failure of the brakes in this case was due to premature wear, meaning the brake pads were defective." Dkt. No. 45, at 8. Thus, Gailor suggests that his earlier claim regarding the brakes being out of adjustment was not a conclusion as to causation.

Plaintiffs fail to demonstrate substantial justification for their failure to timely disclose Gailor's opinion that the brake pads failed due to a manufacturing defect. To the extent that plaintiffs' submissions may suggest that Gailor was waiting on Martens' report to address the cause of the brake failure (Dkt. No. 46, at 6), such does not suffice as a sufficient excuse for the delay. Even if the affidavit is considered a supplemental report

under Rule 26(e),[7] "'common sense suggests (and numerous decisions confirm) that an expert report that discloses new opinions is in no way a mere supplement to a prior report.'" Coene v. 3M Co., 303 F.R.D. 32, 42 (W.D.N.Y. 2014) (quoting Stuhlmacher v. Home Depot USA, Inc., 10-cv-467, 2012 WL 5866297, at *3 (N.D. Ind. 2012). Similarly, designating the affidavit as a rebuttal statement under rule 26(a)(2)(D)(ii) [8] would not suffice, as it is well settled that an expert's rebuttal statement is not an opportunity for a correction or "fill[ing] in the gaps" of the party's case-in-chief, "particularly where those gaps are revealed through the opposing party's summary judgment motion." Chart v. Town of Parma, No. 10-CV-6179P, 2014 WL 4923166, at *26 (W.D.N.Y. Sept. 30, 2014) (citing Morritt v. Stryker Corp., No. 07-CV-2319 (RRM)(RER), 2011 WL 3876960, at *6 (E.D.N.Y. 2011). Further, parties agreed that rebuttal statements were to be submitted thirty days before the discovery deadline. Dkt. No. 8, at 2. As noted, the affidavit was submitted several months after the extended discovery deadline.

Despite the fact that Gailor had the opportunity to review the Martens' report prior to the close of discovery and had done so by the time of his deposition in May 2014, he failed to express his opinion regarding a manufacturing defect in the brake pads during

---

[7] Rule 26(e) provides that expert's supplemental reports "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Parties agreed in the Uniform Order that the order supersedes deadlines set forth in Rule 26(a)(3). As the order states that all discovery is to be completed by May 2, extended to May 29, by order of this court, any discovery submitted after that date would be untimely. Dkt. No. 8, at 1.

[8] MTD's expert's report is dated March 17, 2014. Dkt. No. 30-2, at 122-37. Close of discovery occurred on May 2, 2014. Dkt. No. 8. Gailor's responsive affidavit, although undated, is sworn to on September 26, 2014. Dkt. No. 39. Even if plaintiffs could characterize the affidavit was a rebuttal statement, such a statement would still be untimely. FED. R. CIV. P. 26(a)(2)(D)(ii).

his deposition. Dkt. No. 30-2, at 99. Illustratively, when asked during his deposition, "what caused the brake pad to fall apart," Gailor responded that he did not know. Id. at 95. When asked, "what caused the premature wear on these brake pads," Gailor again responded, "I do not know." Id. at 99. Plaintiffs do not explain why Gailor did not conclude, at the time of his deposition in May 2014 – when he had already reviewed Martens' report and deposition – that the premature wear was due to a manufacturing defect, yet reached that conclusion in his September 2014 affidavit.

Plaintiffs have also failed to demonstrate the harmlessness of their belated submission.[9] MTD did not have an opportunity to have its expert review and address this statement nor did it have an opportunity to depose Gailor about his conclusion. See Chart, 2014 WL 4923166, at *26 (holding that the plaintiff failed to demonstrate harmlessness of an untimely disclosure of an expert affidavit where disclosure occurred after the parties' experts had already completed their reports and were deposed).

### b. **Gailor's Opinion Regarding Sufficiency of Warnings**

In his initial report, the only reference Gailor makes to the owner's manual are his statements that "the manual has no instruction for the adjustment of the brake" and

---

[9] It is not entirely clear whether MTD objects solely to Gailor's claim regarding a manufacturing defect in the brake pads or also to his opinion that the brakes wore prematurely. (Dkt. No. 44-1, at 7-8). Insofar as defendants' submissions may be read as the latter, it does not appear that consideration of this opinion would cause great hardship to MTD. Although Gailor did not discuss wearing of the brakes in his initial report, MTD contended that "all parties agree that the brakes showed extensive wear, and the wear of the brakes prevented the plaintiff from stopping the lawn tractor when he failed to have it in proper gear and he was driving down a hill and he lost control when he attempted to make a turn into a driveway." Dkt. No. 44, at 2.

"cautions against using the machine at a cross slope that exceeds 15 degrees." Dkt. No 39-1, at 5. Gailor's initial report contains no opinion about the manual's warnings or their adequacy/inadequacy nor does it suggest what warnings are necessary. Dkt. No. 30-1, at 103. As defendants observe, Gailor testified in his deposition that the warnings provided in the manual "seemed to be" compliant with industry standards and that the manual appropriately instructs users to take the mower to a service professional for brake adjustments. Dkt. No. 30-2, at 100-102. Gailor also agreed that there was "no other instruction or warning that should have been on the product itself as it relates to the brakes." Dkt. No. 30-2, at 100-102, 105-106. Gailor further testified that brake adjustment instructions are not typically contained in an operator's manual. Id. at 102.

In his affidavit and April 25, 2014 report,[10] Gailor stated that warnings regarding "brake adjustment" were insufficient and that a "warning or highlighting" was needed relating to brake adjustment because this "omission indicates to the user that brake adjustment is not important." Dkt. No. 39, at 4-5; Dkt. No. 39-1, at 8. Gailor further opined that the "only mention of testing the braking mechanism was a mention of 'Parking Brake Adjustment'" and this section

> is not highlighted by the standard exclamation point inside of a triangle as are the 'warnings;' it does not say how often a user should check the brake, or even if they should do so at all; and it fails to consider that the mower will come to a stop when the user lifts his right foot from the drive pedal without use of the braking system when on flat land. The presumption from the manual is that inspection of the braking system is not part of regular, or even irregular maintenance.

---

[10] As noted, Gailor's deposition was taken on May 29, 2014 (Dkt. No. 30-2, at 61); his second report was dated April 25, 2014 (Dkt. No. 39-1, at 7); and his second affidavit was dated September 26, 2014 (Dkt. No. 39-1, at 6).

Dkt. No. 39, at 4-5.

Although plaintiffs do not address MTD's argument that Gailor's opinion regarding warnings should be precluded on consideration of their motion in opposition to summary judgment, as with the brake pad issue, Gailor's affidavit refutes defendants' "characterizations of some of [his] deposition testimony." Dkt. No. 39, at 5. In his affidavit, Gailor contended that the deposition questioning was limited to whether an instruction was needed on how to adjust the lawnmower's brakes. Id. He stated that, although a warning or instruction about how to adjust brakes "might not have prevented this incident, a clear recitation or warning indicating how often to check the brakes and how to do so could certainly have exposed the premature wearing of these brakes." Dkt. No. 39, at 5. Gailor noted that brake checks "are not even part of any sort of maintenance checklist." Id. at 6. Thus, it appears Gailor opines that his deposition testimony focused only on whether an instruction or warning was needed to explain how to *adjust* the brakes, which is distinguishable from whether an instruction or warning was needed to explain how to *check* brakes and how often checking the brakes was needed. Id. at 5-6, at ¶ 22.

Plaintiffs have failed to offer substantial justification as it relates to Gailor's opinion on the sufficiency of warnings in the owner's manual. Even though Gailor indicates that he was unable to form certain opinions until after he perused the submissions of the defense expert (Dkt. No. 39, at 1 at ¶ 4; 3 at ¶ 7), such rationale does not apply to the manual. It does not appear that Gailor's opinions regarding warnings were premised or otherwise reliant upon the defense expert's report. Dkt. No. 39, at 4-6. Further, the manual was made available to Gailor prior to his deposition and initial report. See Dkt. No. 39-1, at 5 (referencing owner's manual). Thus, there is no justification for plaintiffs' delay in

disclosing this opinion nor rational explanation for why Dkt. No. 39 exceeded the scope of Gailor's initial report and deposition testimony.

Although plaintiffs do not address harmlessness, the court acknowledges that Gailor stated his opinion regarding warnings in his April 25, 2014 report (Dkt No. 39-1, at 7-8). MTD received the April 25 report on April 29. Dkt. No. 43-2, at 110. Thus, the September 26, 2014 affidavit (Dkt. No. 39) was not MTD's first chance to view Gailor's opinion regarding the sufficiency of the warnings. MTD may have had the opportunity to question Gailor about his opinion regarding the warnings, but it did not have the benefit of having its expert address this opinion, as the April 25 report was turned over following Martens' deposition. Even absent this opportunity to question their expert regarding Gailor's specific opinions, the defendants do not appear greatly prejudiced. Despite lack of access to Gailor's opinion, Martens testified at length regarding the warnings and their sufficiency, including why additional warnings were not provided instructing consumers on brake adjustments. See Dkt. No. 38-3, at 31-62.

### c. **Appropriate sanctions**

In determining whether a sanction is appropriate and which to apply, a court is to consider: "(1) the proponent's explanation for failing to provide the subject evidence; (2) the importance of such evidence to the proponent's case; (3) the opponent's time needed to prepare to meet the evidence; and (4) the possibility of obtaining a continuance to permit the opponent to meet the evidence." Turley v. ISG Lackawanna, Inc., 803 F.Supp.2d 217, 229 (W.D.N.Y. 2011) (citing Outley, 837 F.2d at 589)). Ultimately, the decision whether to issue a preclusion order is within the discretion of the trial court.

Design Strategy, Inc. v. Davis, 469 F.3d 284, 297-98 (2d Cir. 2006).


### i. **Brake Pads**

As discussed, plaintiffs do not explain their failure to provide in a timely manner Gailor's opinion that the brake pads suffered a defect in manufacturing.  Thus, the first factor weighs in favor of preclusion of consideration of this opinion.  Turley, 803 F.3d at 229.  Under the second prong of the analysis, it is plain that expert opinion that the brake pads failed due to a manufacturing defect would be significant to plaintiffs' case, as it would "go[] to the heart" of their manufacturing defect claim.  Gould v. Rexon Indus. Corp. Ltd., 05-CV-374 (TJM/DEP), 2006 WL 2927149, at *2 (N.D.N.Y. 2006). Under the third factor – prejudice to the defendants, the court concludes that MTD would be prejudiced should it be required to proceed with the case without the opportunity to have its expert witness address Gailor's claims.  However, this prejudice appears curable by the reopening of expert discovery.  Remaining cognizant of the fact that the "harsh remedy" of preclusion is not the preferred action of many courts (Ritchie Risk-Linked Strategies, 280 F.R.D. at 156-57), it appears appropriate that the Court allow for a continuance so that MTD may conduct limited discovery as it relates to Gailor's opinion that the brake pads had a manufacturing defect.  See Chart, at *27 (citing Boyde v. Monroe County, 2011 WL 4457668, at *4 (W.D.N.Y. 2011) (additional citation omitted).  Thus, the Court permits MTD, if it so chooses, to obtain a supplemental statement from Martens addressing Gailor's claim that the brake failure was caused by a manufacturing defect.  This statement must be submitted to the Court

and to plaintiffs within fifteen days of this Memorandum-Decision and Order.  If plaintiffs wish to depose Martens regarding the content of this supplemental report, they will have thirty days from the date of this Memorandum-Decision and Order to depose him and submit a transcript of the deposition to the Court and to MTD.

Furthermore, as plaintiffs offer no substantial justification for this delay, the Court directs that plaintiffs will bear the burden of this expense, which may include expert fees and deposition costs.  See FED. R. CIV. P. 37(c)(A) ("the court, on motion, and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure."); see also M.B. v. CSX Transp. Inc., 299 F.R.D. 341, at *345-46 (N.D.N.Y. 2014); Chart, 2014 WL 4923166, at *27, citing (Ritchie Risk-Linked Strategies, 280 F.R.D. at 157.

### ii. **Warnings**

Under the first prong of the analysis, plaintiffs do not provide a reason for why Gailor's opinion as to the sufficiency of warnings was not included in his initial report. MTD does not discuss in detail the hardship it would face as a result of the belated disclosure of Gailor's opinion as to the warnings.  See Dkt. No. 44-1, at 9.  Under the second prong, Gailor's conclusion that the warnings were insufficient because they could lead a user to believe that checking brakes are unimportant would help to form the foundation of plaintiffs' failure to warn claims.  However, as case law provides that expert testimony is not necessary to establish a failure to warn claim, exclusion of consideration of those portions of Dkt. No. 39 insofar as they relate to insufficient

warnings will not unduly impact the plaintiffs.  See, e.g., Monell v. Scooter Store, Ltd., 895 F.Supp.2d 398, 143-44 (N.D.N.Y. 2012) (quoting Billiar v. Minn. Mining and Mfg. Co., 623 F.2d 240, 247 (2d Cir. 1980) ("Under New York law, the jury does not need expert testimony to find a warning inadequate, but may use its own judgment concerning all the circumstances.").   Assessing the third prong, MTD would not appear to need a significant amount of time or resources to meet Gailor's opinion on warnings.  First, as noted, MTD had at least some opportunity to review Gailor's opinion and question his theory regarding the warnings; although it was late, they were provided with his second report in advance of his deposition.  Dkt. No. 43-2, at 113 (dated as received Apr. 29, 2014).  Second, although MTD did not have the benefit of questioning their expert regarding Gailor's opinion on warnings, Martens did testify to an extent regarding sufficiency of the warnings.  Dkt. No. 38-3, at 31-62.  Indeed, he was questioned whether the manual contained instructions regarding checking the brake and the frequency of checking the brake, and responded that such warnings were not included because the typical consumer would not be able to properly check the brake.  Id. at 47-53.

Under the final prong, a continuance permitting MTD to reopen discovery is more appropriate than preclusion.  Although MTD may have had some notice, albeit short, regarding Gailor's opinion on warnings, because MTD did not have the opportunity to have its expert review these statements, the Court will afford MTD an opportunity to submit an additional statement from Martens addressing Gailor's statements regarding warnings.   This statement, if MTD chooses to obtain one, is to be submitted to the Court and plaintiffs within fifteen days of this decision and order.  Plaintiffs will be

permitted an opportunity to depose Martens regarding the substance of this report.  If

plaintiffs choose to depose Martens, a copy of this deposition transcript must be

submitted to the Court and to MTD within thirty days of this decision and order.

Plaintiffs are to bear the expense of any report or deposition.  See, e.g., Ritchie Risk-

Linked Strategies, 280 F.R.D. at 157; see also Fed. R. Civ. P. 37(c)(A) .


### III.  **Conclusion**

**WHEREFORE**, for the reasons discussed above, defendants' motion to preclude

Dkt. No. 39 from consideration (Dkt No. 44-1, at 7-11) is **GRANTED in part and**

**DENIED in part** insofar as the Court will permit defendants to re-open discovery for

the limited purpose of obtaining a statement from their proposed expert witness

addressing the opinions presented in the affidavit of plaintiffs' proposed witness (Dkt.

No. 39).

**ORDERED** that the Court grants a continuance reopening discovery for the limited

purpose of permitting defendants to obtain a statement from their proposed expert

witness addressing the opinions presented in the affidavit of plaintiffs' proposed

witness (Dkt. No. 39), insofar as they relate to a manufacturing defect in the brake

pads and the sufficiency of the warnings/instructions in the owner's manual.

**ORDERED** that if defendants choose to obtain the supplemental statement from

their proposed expert, it must be submitted to the Court and plaintiffs within **FIFTEEN**

days of this decision and order;

**ORDERED** that if defendants choose to obtain the supplemental statement from

their proposed expert, plaintiffs will be permitted the opportunity to conduct a deposition of defendants' proposed expert limited to matters discussed within this statement.  If plaintiffs choose to depose defendants' proposed expert, the deposition transcript must be submitted to the Court and to plaintiffs within **THIRTY** days of this decision and order;

   **ORDERED** that plaintiffs are to bear the expenses associated with the additional statements and/or depositions, including, but not limited to expert fees, deposition costs, and transcript costs.


   **IT IS SO ORDERED**.


DATED: January 13, 2015
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge